2008 ND 73

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Michael JACOBSON, Defendant and Appellant.**

No. 20070103.

Supreme Court of North Dakota.

April 17, 2008.

Terry W. Elhard, State's Attorney, Ashley, N.D., for plaintiff and appellee.

Chad R. McCabe, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Michael Jacobson appeals a district court criminal judgment. Jacobson was convicted of assault following a bench trial over which the Honorable Bruce B. Haskell presided. At trial, Judge Haskell disclosed to the parties that he was socially acquainted with a physician, Dr. Charles Allen, who was going to be a witness at trial, and that he would be inclined to believe Dr. Allen's testimony. The parties agreed to proceed with the bench trial despite Judge Haskell's familiarity with Dr. Allen. Jacobson argues that Judge Haskell committed reversible error by failing to recuse himself from the matter once he knew Dr. Allen would be testifying at trial.

[¶ 2] We affirm the district court criminal judgment. Judge Haskell, in compliance with the North Dakota Code of Judicial Conduct, disclosed on the record information he believed the parties might consider relevant to his disqualification and provided an opportunity for the parties to agree to waive his disqualification. Jacobson agreed to proceed with Judge Haskell conducting the bench trial. After Judge Haskell found Jacobson guilty of assault, Jacobson moved for a new trial. We conclude that Judge Haskell was disqualified from the proceeding. His disqualification, however, did not require him to immediately remove himself from the proceeding. He properly disclosed information relevant to the question of disqualification. The parties agreed to proceed, thus waiving Judge Haskell's disqualification. Moreover, when a party has knowledge of information relevant to disqualification and waits until the final decision of the judge to object to the judge's involvement in the case, the objection is untimely and results in a waiver.

I

[¶ 3] Jacobson was charged with assault. He waived his right to a jury trial, and the case came before Judge Haskell for a bench trial. During the bench trial, the State called Dr. Allen, an emergency room physician who treated the victim of the alleged assault, as a witness. When Dr. Allen was called to the stand by the State's Attorney, Terry Elhard, the following dialogue ensued between the court, Elhard, and Jacobson's counsel, Donavin Grenz:

Mr. Elhard: State will call Dr. Charles Allen.

The Court: All right. Hang on a second. I don't know if this is going to make a difference to either party but I hadn't gotten a witness list or anything prior and Dr. Allen and I are acquaintances. Our sons played base-

ball together. If that makes a difference to either of you, you better let me know now and I'll recuse myself. I hate to do that after coming down here and everything, but like I said, I didn't have any witness list or any way to know [who] the witnesses were until I walked in this morning—so if that's going to be a problem for you Mr. Grenz.

Mr. Grenz: Your Honor, it's almost impossible to make that determination. I don't know what to say, Your Honor. Clearly you believe that it may have an impact because of your knowledge.

The Court: Well let me put it this way. If Dr. Allen's credibility is going to be an issue, which in most cases witnesses are, I would be inclined to believe what he had to say because I've known him for several years in a couple different contexts and I find him to be a credible, believable person. I mean if all he's going to be testifying to is fact things where credibility isn't much of an issue, then that may make a differen[ce]. I don't know what else I can tell you. Obviously I would do the best I can not to let that unduly influence me, but as I say, I've known him for several years and I would find him believable in most circumstances.

Mr. Grenz: Well Your Honor, based upon the discovery that we made, I can't find any statements or anything else that were given by the doctor. Again, if all he's going to do is testify in regard to what the pictures show and confirm that that was her condition, that's one thing, but if he's going to testify to anything else, I'd ask that that be stricken.

. . . .

Mr. Elhard: . . . I have it in my discovery that he was a witness that we were going to call.

Mr. Grenz: He made that disclosure—

The Court: Well let me stop you. I'll allow Dr. Allen to testify as to his examination in the emergency room, however if there's any records or documents that weren't provided to the defense, he's not going to be able to introduce those into evidence or testify from them.

Mr. Elhard: Okay.

Mr. Grenz: With that proviso, Your Honor.

The Court: All right. Dr. Allen, if you want to come up here please and be sworn.

Dr. Allen provided testimony regarding the victim's injuries. His testimony indicated the injuries were caused by blunt force. Jacobson's attorney did not object to any of Dr. Allen's testimony. Other testimony was provided by the victim, Jacobson, the victim's treating nurse, and the Burleigh County Sheriff's Department investigator who was present during Dr. Allen's examination of the victim.

[¶ 4] The district court found Jacobson guilty of assault. Jacobson moved for a new trial. Jacobson maintained that, after Judge Haskell disclosed his relationship with Dr. Allen, Jacobson was improperly forced to choose between proceeding with the trial or incurring additional costs by postponing the trial. Jacobson argued that Judge Haskell should have recused himself. The district court denied the motion for a new trial.

[¶ 5] Jacobson appeals the district court criminal judgment. He argues Judge Haskell committed reversible error by failing to recuse himself once he knew Dr. Allen would be testifying at trial.

## II

[¶ 6] It is important that our judicial system maintain an appearance of propriety. *See Sargent County Bank v. Wentworth*, 500 N.W.2d 862, 880 (N.D. 1993). The Due Process Clause of the United States Constitution entitles parties in both criminal and civil matters to an impartial, neutral, and disinterested tribunal. *State v. Anderson*, 427 N.W.2d 316, 320 (N.D.1988). The public's respect and confidence in the integrity of the judicial system " 'can only be maintained if justice satisfies the appearance of justice.' " *Wentworth*, 500 N.W.2d at 877 (citation omitted). A judge is presumed by law to be unbiased and not prejudiced. *Farm Credit Bank of St. Paul v. Brakke*, 512 N.W.2d 718, 720 (N.D.1994). However, to maintain the judiciary's appearance of propriety, a judge is to recuse himself from any matter in which the judge's impartiality would be questioned. *See* N.D.Code Jud. Conduct Canon 3(E).

[¶ 7] A judge's disqualification decision is directed by the North Dakota Code of Judicial Conduct. *Wentworth*, 500 N.W.2d at 877. The Code mandates that a judge shall avoid impropriety and the appearance of impropriety. N.D.Code Jud. Conduct Canon 2. "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned...." N.D.Code Jud. Conduct Canon 3(E)(1). The Code provides a non-exhaustive list of instances when a judge must recuse himself from a matter:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceedings;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;

(c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;

(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

*Id.* An objective standard is used to determine whether a judge must recuse himself. *Brakke*, 512 N.W.2d at 721. "[T]he judge must determine whether a reasonable person could, on the basis of all the facts, reasonably question the judge's impartiality." *Id.* "Even without intentional bias, disqualification can be essential to satisfy the appearance of justice." *Wentworth*, 500 N.W.2d at 877–78.

[¶ 8] We have held that a judge is disqualified from cases in which a reasonable person could have reasonably questioned the judge's impartiality on the basis of all

the facts. *See, e.g., Wentworth,* 500 N.W.2d at 879–80 (holding the district court judge erred by failing to disqualify himself from a bench trial in a complex foreclosure action because the judge was represented in an unrelated matter by an attorney who was a member of a law firm representing one of the parties in the foreclosure action); *Matter of Estate of Risovi,* 429 N.W.2d 404 (N.D.1988) (holding the district court judge should have recused himself from a matter because he gave legal advice regarding the estate at issue to one of the parties before becoming a judge). We have also held that a judge properly presided over a matter in which a reasonable person could not have reasonably questioned the judge's impartiality on the basis of all the facts. *See, e.g., Brakke,* 512 N.W.2d 718 (N.D.1994) (holding that under the events in the case the district court judge's recusal from the matter was not mandated by the fact that the judge had been named as a defendant in another suit by a party in the matter before the judge); *State v. Dailey,* 2006 ND 184, 721 N.W.2d 29 (holding the district court judge was not disqualified from sentencing a defendant for manslaughter and driving under the influence when the judge made statements to the jury after the jury entered its verdict about the defendant's prior driving under the influence convictions and the defendant's prior involvement in drug court).

■ [¶ 9] When a judge is disqualified, the judge must either withdraw from the matter or disclose the information relevant to the judge's disqualification to the parties and ask the parties to consider waiver of the disqualification. *See* N.D.Code Jud. Conduct Canon 3(F); *Estate of Risovi,* 429 N.W.2d at 406. Withdrawal is the only permissible action in instances when the judge is personally biased or prejudiced concerning a party or a party's lawyer, or

has personal knowledge of disputed evidentiary facts concerning the proceeding. N.D.Code Jud. Conduct Canon 3(F); *Estate of Risovi,* 429 N.W.2d at 406. When withdrawal is mandatory, the judge must immediately withdraw from the proceeding. *Estate of Risovi,* 429 N.W.2d at 407. Disclosure is an option on any basis for disqualification other than personal bias or prejudice. N.D.Code Jud. Conduct Canon 3(F).

■ [¶ 10] When disclosure is a permissible course of action for a disqualified judge, and, thus, withdrawal from the proceeding by the disqualified judge is not mandated, the judge's disqualification may be remitted under Canon 3(F), N.D.Code Jud. Conduct. Canon 3(F) provides,

A judge disqualified by the terms of Section 3E may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

The commentary to Canon 3(F) explains that this procedure is designed to ensure that consideration of the question of remittal is made independently of the judge.

■ [¶ 11] A judgment may be reversed because of a judge's violation of the North Dakota Code of Judicial Conduct. *Wentworth,* 500 N.W.2d at 879–80. However, "the failure to raise the question of judicial bias in the trial court ordinarily precludes our review of that question on

appeal." *Delzer v. United Bank*, 484 N.W.2d 502, 509 (N.D.1992).

### III

[¶ 12] Jacobson was entitled to an impartial, neutral, and disinterested tribunal. He argues Judge Haskell committed reversible error by failing to disqualify himself after openly disclosing personal bias or prejudice in favor of the State's expert witness. Jacobson asserts that Judge Haskell's impartiality would reasonably be questioned because he offered to recuse himself and he admitted that he would be inclined to find Dr. Allen's testimony credible. The State contends Judge Haskell did not indicate any bias or prejudice against the defendant. The State argues Judge Haskell's social acquaintance with a disinterested expert witness did not mandate his recusal from the matter.

[¶ 13] Judge Haskell is presumed by law to be unbiased and not prejudiced. *See Brakke*, 512 N.W.2d at 720. Judge Haskell's involvement in this matter was proper unless a reasonable person could, on the basis of all the facts, reasonably question his impartiality. Although a judge has a duty to recuse when required by the Code, a judge also has an "equally strong duty not to recuse when the circumstances do not require recusal." *See* Center for Professional Responsibility, American Bar Association, Annotated Model Code of Judicial Conduct 187 (2004); *cf. Brakke*, 512 N.W.2d 718 (holding a judge should not disqualify when a party brings a frivolous lawsuit against the judge for the purpose of disqualifying him from the proceeding). Canon 3(B)(1), N.D.Code Jud. Conduct, imposes on a judge the duty to "hear and decide matters assigned to the judge except those in which disqualification is required." Canon 3(B)(1) was added to the Code "to emphasize the judicial duty to sit and to minimize potential abuse of the disqualification process." Center for Professional Responsibility, *supra*, at 188 (quoting ABA Standing Committee on 1990 Code, Legislative Draft 15 (1990)).

[¶ 14] Jacobson argues Judge Haskell was disqualified from Jacobson's case because Judge Haskell's social relationship with Dr. Allen evidenced an impermissible bias or prejudice against Jacobson. Jacobson further argues Judge Haskell should have recused himself because of his admission that he would find Dr. Allen's testimony credible. Jacobson contends Judge Haskell was mandated to withdraw from the case by the North Dakota Code of Judicial Conduct because of his disqualification.

[¶ 15] Sections (E) and (F) of Canon 3, N.D.Code Jud. Conduct, govern disqualification. While under Canon 3(E)(1), N.D.Code Jud. Conduct, the list of circumstances under which a judge is disqualified from a matter is not exhaustive, the contents of that list are instructive. Canon 3(E)(1)(a), N.D.Code Jud. Conduct, indicates that a judge shall disqualify himself when "the judge has a personal bias or prejudice concerning *a party* or *a party's lawyer*, or personal knowledge of disputed evidentiary facts concerning the proceedings." (Emphasis added.)

[¶ 16] Under Canon 3(F), N.D.Code Jud. Conduct, a judge disqualified under section 3(E)(1)(a) must immediately remove himself from the proceeding. Here, Judge Haskell's familiarity with a disinterested expert witness did not relate to personal bias or prejudice concerning a party, a party's lawyer, or personal knowledge of a disputed fact in the case and therefore does not fall into the section mandating disqualification. *See* Canon 3(E)(1)(a). An appearance of partiality requiring a judge's disqualification does not automatically result from a judge's casual

or social acquaintance with a witness. *See* Center for Professional Responsibility, *supra*, at 208. To impose such a rule could potentially have severe results, particularly in our primarily rural state. *See In re Conduct of Jordan*, 290 Or. 669, 624 P.2d 1074, 1075 (1981) ("judges cannot be expected to disqualify themselves in all cases in which they may be casually acquainted with parties or witnesses, particularly in smaller communities").

[¶ 17] Although Judge Haskell was not disqualified by his mere familiarity with an expert witness, we agree with Jacobson that Judge Haskell's admission that he would be inclined to believe Dr. Allen's testimony where credibility is an issue created a situation in which Judge Haskell's impartiality might reasonably be questioned. Judge Haskell said,

> If Dr. Allen's credibility is going to be an issue, which in most cases witnesses are, I would be inclined to believe what he had to say because I've known him for several years in a couple different contexts and I find him to be a credible, believable person. I mean if all he's going to be testifying to is fact things where credibility isn't much of an issue, then that may make a differen[ce]. I don't know what else I can tell you. Obviously I would do the best I can not to let that unduly influence me, but as I say, I've known him for several years and I would find him believable in most circumstances.

This statement reveals Judge Haskell felt a reasonable person might question his impartiality because of his inclination to believe the expert witness if credibility was an issue. What Judge Haskell said indicates he decided he was disqualified from the proceeding. Because his impartiality might reasonably be questioned on the basis of all of the facts, we conclude Judge Haskell was correct that he was disqualified under the North Dakota Code of Judicial Conduct from involvement in Jacobson's case.

[¶ 18] Under Canon 3(E) and (F), N.D.Code Jud. Conduct, once a judge is disqualified from a proceeding, the next question becomes whether the disqualification mandates the judge's withdrawal from the proceeding or whether the judge can disclose the basis of the disqualification and ask the parties to consider whether to waive the disqualification. We conclude Judge Haskell was not mandated to immediately withdraw from this case under Canons 3(E) and (F), N.D.Code Jud. Conduct. Judge Haskell did not have a personal bias or prejudice concerning the State or Jacobson, or the lawyers, and he did not have any personal knowledge of any of the disputed evidentiary facts, which are the only circumstances that mandate immediate removal of the judge from the proceedings. He, therefore, had the option, under Canon 3(F), N.D.Code Jud. Conduct, of either withdrawing or disclosing to the parties on the record the basis for his disqualification and asking them to consider whether to remit disqualification. He chose to disclose information relevant to the question of disqualification to the parties in compliance with Canon 3(F) and provided an opportunity for them to remit his disqualification. By agreeing to proceed, the parties remitted Judge Haskell's disqualification. *See Pannell v. State*, 71 S.W.3d 720 (Tenn.Crim.App. 2001) (holding defendant, whose counsel engaged in colloquy with judge during pre-trial motions regarding facts relating to the judge's disqualification which the judge revealed at that time, remitted disqualification of trial judge when defendant's counsel indicated to the judge during that colloquy that the defendant did not object to the judge sitting as presiding judge in the case).

[¶ 19] We acknowledge that under the commentary of Canon 3(F), N.D.Code Jud. Conduct, the judge "must not solicit, seek or hear comment on possible remittal or waiver of the disqualification unless the lawyers jointly propose remittal after consultation" with their clients. N.D.Code Jud. Conduct Canon 3(F) cmt. In the present case, Judge Haskell did not ask the parties and their lawyers to consider, out of his presence, whether to waive disqualification. He, therefore, did not strictly follow the procedure required by Canon 3(F), N.D.Code Jud. Conduct. That failure to follow the N.D.Code of Judicial Conduct is not excusable. While not an excuse, we do note that what happened is likely explained by the circumstances of this case. Judge Haskell did not know Dr. Allen was a witness prior to the beginning of the trial. The disqualification issue, therefore, did not arise until Dr. Allen was called to testify by the State. The inexcusability of Judge Haskell's failure to follow the procedure outlined in Canon 3(F), N.D.Code Jud. Conduct, does not necessarily render Judge Haskell's procedural missteps prejudicial.

[¶ 20] We recognize that the annotated Model Code of Judicial Conduct indicates that methods of obtaining a waiver of disqualification which deviate from the requirements outlined in Canon 3(F) are not valid. *See* Center for Professional Responsibility, *supra*, at 249. However, the authorities cited in the annotated Model Code in support of that proposition, all of which relate to judicial ethics and discipline, do not provide that, in order for a remittal of disqualification to be valid, the procedure outlined in Canon 3(F) must be strictly followed. *See In re Platt*, 269 Kan. 509, 8 P.3d 686 (2000) (holding public censure appropriate for judge who refused to automatically disqualify himself from proceedings involving attorneys against whom he was personally biased); *In re Johnson*, 341 S.C. 30, 532 S.E.2d 883 (2000) (holding public reprimand warranted when judge failed to disqualify herself in matter in which an arrest warrant was sought against her grandson); Ariz. Jud. Eth. Adv. Comm. Op. 97–2, 1997 WL 599607, at * 1 (Feb. 13, 1997) (stating "The remittal procedure of Canon 3F must be strictly followed," in the context of an ethics opinion advising municipal judges that they should recuse themselves from cases in which a party is represented by a member of the municipal judges merit commission, but that remittal of disqualification is possible under Canon 3F). None of the authorities cited invalidate a remittal of disqualification on the basis that the procedure required by Canon 3(F) was not strictly followed. *See id.*

[¶ 21] The procedure of having the parties and their lawyers consider whether to waive disqualification out of the presence of the judge is to ensure the decision is made independent of any influence of the judge. N.D.Code Jud. Conduct Canon 3(F) cmt. The record in this case indicates that Judge Haskell never proposed a waiver of disqualification to the parties and never made any comment that could be construed as pressure to consent to his continuing to hear the case. The parties do not allege any such improper conduct; Jacobson does not argue he was denied an opportunity to discuss whether to waive Judge Haskell's disqualification, nor does he argue the district court erred by failing to strictly follow the procedure required by Canon 3(F), N.D.Code Jud. Conduct.

[¶ 22] On the record, the parties agreed to proceed before Judge Haskell, after Jacobson asked Judge Haskell to restrict the scope of Dr. Allen's testimony to testimony regarding his emergency room examination of the victim. Judge Haskell stated he would allow Dr. Allen to testify as to his examination in the emergency

room, but not as to records not provided to the defense. During Dr. Allen's testimony, Jacobson had the opportunity to make evidentiary objections regarding the questions asked of Dr. Allen and Dr. Allen's responses. Jacobson did not object to any portion of Dr. Allen's testimony. Jacobson also never moved to disqualify Judge Haskell at any time thereafter.

[¶ 23] After the criminal judgment had been entered against him, Jacobson moved for a new trial. A party seeking to disqualify a judge from a proceeding must file a timely motion. *See* Center for Professional Responsibility, *supra*, at 187. It was improper for Jacobson to wait to see if the district court decision was favorable to him before moving for a new trial on the ground that Judge Haskell should have recused himself from the matter. *See id.; see also United States v. Vadner*, 160 F.3d 263, 264 (5th Cir.1998) (holding "[t]he most egregious delay—the closest thing to per se untimeliness—occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal"); *Madsen v. Prudential Fed. Sav. & Loan Assn.*, 767 P.2d 538, 543 (Utah 1988) (quoting 46 Am.Jur.2d *Judges* § 202, at 225–26 (1969)) ("It is a well-recognized rule that an application for the disqualification of a trial judge must be filed at the earliest opportunity. The courts generally apply this rule with strictness against a party who, having knowledge of the facts constituting a disqualification, does not seek to disqualify the judge until an unfavorable ruling has been made.").

[¶ 24] Even if strict compliance with the procedure outlined in Canon 3(F), N.D.Code Jud. Conduct, was required, Jacobson would not prevail on appeal because Jacobson waived his right to dis-qualification by failing to request disqualification until after Judge Haskell entered a criminal judgment finding him guilty of assault, and because he and his lawyer knew the facts that would form the basis of disqualification prior to entry of the judgment against him. Under the circumstances of this case, we hold Jacobson waived his right to disqualify Judge Haskell by waiting until after the criminal judgment was entered against him to move for a new trial based on mandatory disqualification of Judge Haskell.

IV

[¶ 25] Judge Haskell complied with the North Dakota Code of Judicial Conduct and was not mandated to remove himself from this matter sua sponte. He was not disqualified because of his social acquaintance with a disinterested expert witness. However, Judge Haskell's admission that he would be inclined to believe Dr. Allen's testimony where credibility is an issue created an objective appearance of partiality constituting a disqualification. His disqualification, however, did not require him to immediately remove himself from Jacobson's case because it did not arise from a bias or prejudice against the parties, the lawyers, or personal knowledge of disputed evidentiary facts. He had the option to disclose and did disclose on the record information relevant to the question of disqualification. He provided an opportunity for the parties to waive his disqualification. The parties agreed to proceed, thus remitting Judge Haskell's disqualification. Although he did not strictly follow the procedure of Canon 3(F), N.D.Code Jud. Conduct, both parties agreed to proceed with him conducting the bench trial without any evidence in the record they did so because of comments by Judge Haskell. Moreover, Jacobson also waived his right to disqualify Judge Haskell by waiting until a criminal judgment was entered against

him to raise the issue. We, therefore, affirm the district court criminal judgment.

[¶ 26] CAROL RONNING KAPSNER, J., concurs.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 27] I concur in the result reached in the opinion by Justice Maring and in the concurring opinion of Justice Crothers. I agree this is not a matter of the judge's personal bias or prejudice concerning a party or a party's lawyer. I also agree with Justice Maring that a party who has knowledge of the facts constituting a disqualification cannot wait until the judge has made an unfavorable ruling to seek disqualification of the judge. Because this is not a matter of the judge's personal bias or prejudice and because the defendant waited until an unfavorable ruling had been made to raise the issue, I further agree the criminal judgment should be affirmed.

[¶ 28] DALE V. SANDSTROM, J., concurs.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 29] I agree with much the Majority says about judicial impartiality and the reasons for judicial disqualification. However, those legal concepts become both confusing and difficult to apply because of the inherent mismatch created when disciplinary rules are used to regulate adjudicative proceedings. *See Sargent County Bank v. Wentworth,* 500 N.W.2d 862, 877 (N.D.1993) ("The Rules of Judicial Conduct direct a judge's decisions on disqualification."). "A violation of the Rules of

Judicial Conduct by the judge who presides over a case can result in the reversal of a judgment." *Id.* at 879–80. The result is that across the nation, Canon 3E has become the most litigated section of the Model Code of Judicial Conduct. *See* Ronald D. Rotunda et al., *Legal Ethics: The Lawyer's Deskbook on Professional Responsibility* 862 (2002). I write separately to minimize the inherent confusion and difficulty of using disciplinary rules in courtroom proceedings and to prevent that confusion from being compounded by a lack of clear demarcation between what I think are several distinct concepts under Canons 3E and 3F.

[¶ 30] One concept is that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." N.D.Code Jud. Conduct Canon 3E. Our decisions interpret Canon 3 to require disqualification for both actual partiality and the appearance of partiality. This Court has explained:

"The Rules of Judicial Conduct direct a judge's decisions on disqualification. Rule 2 demands that '[a] judge shall avoid impropriety and the appearance of impropriety in all his activities.' Rule 2(A) thus directs that '[a] judge shall respect and comply with the law and shall act in such a manner that promotes public confidence in the integrity and impartiality of the judiciary.' Rule 3(C)(1)(a) makes a judge's disqualification 'appropriate when the judge's impartiality might reasonably be questioned.'"

*Wentworth,* 500 N.W.2d at 877.[1]

[¶ 31] This Court has also stated, "The appearance of impropriety can be as im-

---

1. The "Rules of Judicial Conduct" referred to in *Wentworth* were North Dakota's adoption of the American Bar Association's 1970 version of the Model Code of Judicial Conduct. Those Rules were replaced by our adaptation of the American Bar Association's 1990 Code

portant as the fact." *Farm Credit Bank of St. Paul v. Brakke,* 512 N.W.2d 718, 720 (N.D.1994). We explained in *Wentworth:*

> "The disqualification directions in Rule 3(C) are not merely guidelines; they are mandatory. Our primary concern is the preservation of public respect and confidence in the integrity of the judicial system, which 'can only be maintained if justice satisfies the appearance of justice.' Even without intentional bias, disqualification can be essential to satisfy the appearance of justice."

*Id.* at 877–78 (citations omitted). These general and difficult to administer concepts, along with some cases deciding particular fact patterns, are all we have offered judges to decide in a myriad of situations whether they can or should continue to preside over a case.

[¶ 32] A second concept is that the Code provides several "automatic" or "per se" circumstances when a judge is disqualified. Judges are disqualified from presiding over matters when they have an actual bias or prejudice concerning a party or a party's lawyer, when they have personal knowledge of evidentiary facts, or when they or a close family member were or are a lawyer, witness, or have an economic interest in the matter. *See* N.D.Code Jud. Conduct Canon 3E(1). With few exceptions not relevant to this case, these circumstances automatically and immediately disqualify the judge from presiding over a case. *Id.; see also* James J. Alfini et al., *Judicial Conduct and Ethics* § 4.04, at 4–10 (4th ed. 2007) ("The Codes provide a list of circumstances in which a judge's disqualification is automatic.").

[¶ 33] Concept three is that most disqualifications under Canon 3E can be waived by inaction or failure to object. Alfini, *supra* § 4.14, at 4–67. However, waiver of an objection available under Canon 3E is far different from the exacting remittal procedure prescribed in Canon 3F. Because strict adherence to the remittal procedures in Canon 3F is required, it would be antithetical to apply normal waiver analysis to that process. Although not an issue here, because remittal is not permitted for "personal bias or prejudice concerning a party, the parties and lawyers," a party likely cannot waive an objection to a judge's failure to disqualify on any of the grounds for which remittal is prohibited. *See* N.D.Code Jud. Conduct Canon 3F; *Matter of Estate of Risovi,* 429 N.W.2d 404, 407 (N.D.1988) (where disqualification cannot be remitted, judge must immediately withdraw and any subsequent order is void).

[¶ 34] In this case, I agree with the Majority that the Judge was not automatically disqualified due to the presence of any per se circumstances. Majority Opinion at ¶ 16. Therefore, the issues on appeal are whether the Judge abused his discretion by not recusing, whether Jacobson waived his objection to the Judge's failure to recuse himself, and whether the Judge did recuse himself and the parties remitted his disqualification under Canon 3F.

### Recusal and Waiver

[¶ 35] North Dakota judges have a balancing act to perform when faced with a question of partiality. On the one hand,

of Judicial Conduct, which became effective in North Dakota on January 1, 1994. *See North Dakota Court Rules, State, 2008,* 466 (Thomson/West 2008). Canon 3C of the 1970 Code was strengthened in the 1990 Code to include mandatory language and became what we now know as Canon 3E. However, this Court in *Wentworth* construed the provisions of 3C "as mandatory and not merely guidelines." *Reems v. St. Joseph's Hosp.,* 536 N.W.2d 666, 671 n. 3 (N.D.1995). Therefore, this Court's application of Canon 3C in *Wentworth* has equal application to current Canon 3E. *Reems,* at 671 n. 3.

judges are instructed to "hear and decide matters assigned to the judge except those in which disqualification is required." N.D.Code Jud. Conduct Canon 3B(1). On the other hand, judges are disqualified from a case when, by use of an objective test, they determine their "impartiality might reasonably be questioned." N.D.Code Jud. Conduct Canon 3E(1). When a judge believes he or she is not disqualified but circumstances exist material to that consideration, the judge is encouraged to disclose those circumstances to the parties. Commentary to the Code provides:

"A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification."

N.D.Code Jud. Conduct Canon 3E(1) cmt. *See Reems v. St. Joseph's Hosp.*, 536 N.W.2d 666, 674 (N.D.1995) (Meschke, J., dissenting) (Judge's "failure either to disclose or to disqualify compounds the problem of perceived partiality, even if he was not actually biased.").

[¶ 36] Here, the Judge learned during trial that he had a social relationship with a witness. In response, the Judge did not deem himself disqualified from the case and he did not terminate his participation. Instead, he disclosed on the record the basis of the relationship with the witness, as contemplated in the commentary quoted above. The colloquy between the Judge and counsel was as follows:

"Mr. Elhard: State will call Dr. Charles Allen."

"The Court: All right. Hang on a second. I don't know if this is going to make a difference to either party but I hadn't gotten a witness list or anything prior and Dr. Allen and I are acquaintances. Our sons played base-ball together. *If that makes a difference to either of you, you better let me know now and I'll recuse myself.* I hate to do that after coming down here and everything, but like I said, I didn't have any witness list or any way to know [who] the witnesses were until I walked in this morning-so if that's going to be a problem for you Mr. Grenz."

(Emphasis added.)

[¶ 37] The foregoing shows the Judge made an initial disclosure of a social relationship with the witness. I view his statement, "If that makes a difference to either of you, you better let me know now and I'll recuse myself," as one inviting a motion for the Judge to recuse, as intended by the Canon and commentary. N.D.Code Jud. Conduct Canon 3E and cmt. *See also Model Code of Judicial Conduct* R. 2.11 cmt. 5 at 28 (2007) (discussing the ABA's new Rule 2.11 on disqualification and modified Commentary that "[a] judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification."). Notably, "Disclosure of information relevant to disqualification does not mandate a judge's disqualification." *See Model Code of Judicial Conduct* Canon 3E(1) annot. at 190 (2004).

[¶ 38] Neither counsel accepted the Judge's invitation to request recusal, either at the outset or after further discussion. Normally, the failure to object is a waiver precluding subsequent challenge on appeal. *See Delzer v. United Bank of Bismarck,* 484 N.W.2d 502, 509 (N.D. 1992). However, further consideration of the question is required because of the Judge's subsequent statement he would generally find the witness credible.

[¶ 39] After inviting a recusal motion and receiving equivocation from defense counsel ("Your Honor, it's almost impossible to make that determination. I don't know what to say, Your Honor. Clearly you believe that it may have an impact because of your knowledge.") the Judge said:

> "The Court: Well let me put it this way. If Dr. Allen's credibility is going to be an issue, which in most cases witnesses are, I would be inclined to believe what he had to say because I've known him for several years in a couple different contexts and I find him to be a credible, believable person. I mean if all he's going to be testifying to is fact things where credibility isn't much of an issue, then that may make a differen[ce]. I don't know what else I can tell you. Obviously I would do the best I can not to let that unduly influence me, but as I say, I've known him for several years and I would find him believable in most circumstances."

The majority concludes, and I agree, these statements by the Judge that he would find the witness credible "created a situation in which Judge Haskell's impartiality might reasonably be questioned." Majority Opinion at ¶ 17. However, I cannot agree with the Majority's conclusion that the Judge's disclosure "indicates he decided he was disqualified from the proceeding." *Id.*

[¶ 40] In my view, the Judge should have recused himself under Canon 3E on the basis of his view of Dr. Allen's credibility. But he did not. Jacobson could have contemporaneously objected to the Judge presiding over the trial. But he did not. Instead, Jacobson waited until after trial and until after he received an unfavorable decision to move for a new trial based on judicial partiality. Jacobson waited too long and waived his objection to the Judge not recusing himself. The result is that Jacobson waived his objection under Canon 3E. I therefore concur with the Majority's conclusion that the judgment should be affirmed.

[¶ 41] My analysis would end here, and I would not reach issues relating to Canon 3F and remittal of disqualification. I therefore cannot join the Majority because it concludes the Judge did recuse himself and because it proceeds to discuss and decide this case based on remittal under Canon 3F.

Remittal of Disqualification

[¶ 42] Canon 3F provides a procedure for remittal of a judge's disqualification from a case under certain circumstances. We are cautioned that "Canon 3F permits the parties to waive disqualification if the proper steps are taken." *Model Code of Judicial Conduct* Canon 3F annot. at 249 (2004). "Any method for obtaining a waiver of disqualification that deviates from the requirements of Canon 3F is not valid." *Id. See* Ariz. Jud. Eth. Adv. Comm. Op. 97–2, 1997 WL 599607, at * 1 (Feb. 13, 1997) ("The remittal procedure of Canon 3F must be strictly followed.").

[¶ 43] The Code of Judicial Conduct provides for remittal and states:

> "Remittal of Disqualification. A judge disqualified by the terms of Section 3E may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The

agreement shall be incorporated in the record of the proceeding."

N.D.Code Jud. Conduct Canon 3F. Broken down, effective remittal conducted in strict compliance with Canon 3F requires a showing that each of the following steps have been taken:

1. The judge determined he or she is disqualified under Canon 3E;

2. the judge determined disqualification under Canon 3E was for other than personal bias or prejudice concerning a party, the parties or their lawyers;

3. the judge determined he or she is willing to offer remittal;

4. the judge disclosed to the parties and their lawyers the basis for the judge's disqualification;

5. the parties and their lawyers determined they are interested in waiving disqualification;

6. the parties and their lawyers determined they all waive or remit the judge's disqualification;

7. the parties' and their lawyers' determination to waive the judge's disqualification was made "without participation by the judge";

8. the judge agreed to participate in the proceeding after being notified that all parties and their lawyers have waived or remitted disqualification; and

9. the agreement of all parties and their lawyers to waive or remit disqualification, and the judge's agreement to participate, has been incorporated into the record.

N.D.Code Jud. Conduct Canon 3F. These requirements are cumulative. The grammatical structure of Canon 3F indicates all of these criterion must be satisfied before remittal is permitted. In the case before the Court, any analysis of remittal is ulti-

mately fruitless because the record does not support a conclusion that all of these requirements were addressed, much less satisfied.

[¶ 44] I will assume for purposes of analysis that the Judge's statement, "I'll recuse myself," was in fact a statement of recusal. I will also presume for purposes of analysis that the Judge determined recusal was for reasons other than automatic disqualification, and that the Judge decided he was willing to accept remittal. These conclusions enjoy support, at least by implication, in the Judge's statement, "If that makes a difference to either of you, you better let me know now and I'll recuse myself." Thus, the first three factors arguably have been satisfied. Similarly, the Judge's disclosure of his reason for disqualification satisfies the fourth prong of Canon 3F requiring that the parties and their lawyers know why the Judge removed himself from the case and what they are agreeing to waive.

[¶ 45] But I cannot agree the remaining factors are supported in the record. Factors five and six require that the parties and their lawyers be given an opportunity to decide if they are interested in remitting, and that they have the chance to make that decision "without participation by the judge." Commentary to Canon 3F explains that these requirements are "[t]o assure that consideration of the question of remittal is made independently of the judge." N.D.Code Jud. Conduct Canon 3F cmt. The comments also state, "[A] judge must not solicit, seek or hear comment on possible remittal or waiver of the disqualification unless the lawyers jointly propose remittal after consultation as provided in the rule." *Id.*

[¶ 46] Here, we have been offered nothing directly supporting an argument that the parties wanted to remit disqualification. We could only reach that conclu-

sion by inference based on the lack of an objection to the Judge's continuation of the case, or upon counsel's statement following the Judge's disclosure on the record:

"Mr. Grenz: Well Your Honor, based upon the discovery that we made, I can't find any statements or anything else that were given by the doctor. Again, if all he's going to do is testify in regard to what the pictures show and confirm that that was her condition, that's one thing, but if he's going to testify to anything else, I'd ask that that be stricken."

. . . .

"Mr. Elhard: ... I have it in my discovery that he was a witness that we were going to call."

"Mr. Grenz: He made that disclosure—

"The Court: Well let me stop you. I'll allow Dr. Allen to testify as to his examination in the emergency room, however if there's any records or documents that weren't provided to the defense, he's not going to be able to introduce those into evidence or testify from them."

"Mr. Elhard: Okay."

"Mr. Grenz: *With that proviso, Your Honor.*"

"The Court: All right. Dr. Allen, if you want to come up here please and be sworn."

(Emphasis added.)

[¶ 47]  Given the need for strict compliance with remittal procedures, we should be unwilling to conclude Jacobson agreed to discuss remittal of the Judge's disqualification based on his counsel's concurrence in an in-limine motion concerning documents or records not produced in discovery and not admissible at trial. I also believe we neuter our Canon if we conclude—like the Majority appears to have concluded—that this requirement is satis-

fied by a party's failure to affirmatively object to the judge continuing to preside over a matter. This is especially true since the question of remittal is not ripe for consideration until *after* the judge is disqualified. *See* N.D.Code Jud. Conduct Canon 3F ("A judge disqualified by the terms of Section 3E ... may ask the parties and their lawyers ... to waive disqualification.").

[¶ 48]  This record also contains nothing to support the conclusion Jacobson and his attorney had an opportunity to discuss remittal out of the Judge's presence. Nor do we have any support in the record that the parties and their attorneys had an opportunity to discuss remittal without the Judge being present. Instead, the trial transcript contains the colloquy between the Court and counsel, followed by the testimony of Dr. Allen. Nothing indicates a time-line break or a private conversation between any of the parties and their counsel. On these facts, factors five and six have not been satisfied.

[¶ 49]  The seventh requirement is that all parties and their counsel agree to waive or remit disqualification. Commentary to Canon 3F states, "A party may act through counsel if counsel represents on the record that the party has been consulted and consents." Like consideration of factor five, silent acquiescence in the Judge's continuation of trial should be insufficient as a matter of law to conclude Jacobson waived or remitted disqualification. I also have difficulty contemplating how all of the parties and their lawyers could have agreed to remit disqualification without first having had an opportunity to communicate with each other out of the Judge's presence. However, due to availability of electronic communications and ever-resourceful counsel, I am willing to leave that question for another day.

[¶ 50] The eighth requirement is that the judge agrees to proceed after being notified that all parties and their lawyers consent to remittal. Here, we have no remittal agreement by the parties, so nothing could have been communicated to the Judge. We also have no express acknowledgment that, after deeming himself disqualified, the Judge accepted remittal and rejoined the case. Rather, we have a record showing disclosure by the Judge, followed by a colloquy between the Judge and counsel, followed by a limitation of documentary evidence, followed by Dr. Allen's testimony, and ultimately followed by completion of trial. These facts are consistent with a judge making a disclosure under Canon 3E, as discussed above. These facts are inconsistent with the mandatory—and cumulative—remittal procedures required under Canon 3F.

[¶ 51] The ninth and final requirement is that the remittal agreement be "incorporated in the record." Commentary to Canon 3F states, "As a practical matter, a judge may wish to have all parties and their lawyers sign the remittal agreement." The reason for requiring a clear record should be self-evident; we do not want ambiguity in situations involving judicial ethics or courtroom proceedings. The impact of the lack of a clear record is demonstrated here, where uncertainty exits whether the Judge disqualified himself and, if so, whether he intended to offer remittal of that disqualification. The lack of an agreement incorporated into the record means that any arrangement between the court, the counsel and the parties was ineffective.

[¶ 52] In summary, I cannot agree the district court conducted a remittal proceeding under Canon 3F. If this really was a remittal proceeding, I would conclude the district court abused its discretion by remitting disqualification based on the record before us. I therefore respectfully dissent from that portion of the Majority Opinion discussing and deciding that this case is based on Canon 3F.

[¶ 53] DANIEL J. CROTHERS, J.