# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 184

State of North Dakota,                                    Plaintiff and Appellee

  v.

Christopher Alan Vickerman,                        Defendant and Appellant

## No. 20220085

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Douglas L. Mattson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.

Opinion of the Court by Jensen, Chief Justice.

Rozanna C. Larson, State's Attorney, Minot, ND, for plaintiff and appellee.

Robert W. Martin, Minot, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1]   Christopher Vickerman appeals from a judgment entered following his conviction by a jury of a class AA felony murder. Vickerman asserts there was insufficient evidence to warrant a conviction, the district court abused its discretion in admitting hearsay statements of the victim, he was denied his right to confront a witness, the trial judge demonstrated impermissible bias during sentencing, and the court imposed an improper sentence of a term of years exceeding his life expectancy when the maximum sentence of life without parole requires the calculation of his life expectancy. We affirm the conviction and remand for resentencing.

I

[¶2]   On May 10, 2019, the victim, Vickerman's father, was found deceased in his home, with four gunshot wounds. Video surveillance footage from the home's security system captured video of the victim falling to the ground after opening the door. The video also showed an individual matching the description of Vickerman and his clothing enter the home, set a gun down, pick up items off the floor, and perform CPR on the victim. Vickerman was charged with a class AA felony murder.

[¶3]   Prior to trial the State sought an evidentiary ruling on the admissibility of testimony from witnesses regarding Vickerman's relationship with the victim, including statements made by the victim before his death. The testimony was intended to prove there were issues between Vickerman and the victim relating to a house and the custody of Vickerman's children. Vickerman objected to the anticipated testimony arguing the victim's statements were hearsay and a violation of Vickerman's right to confront the declarant. The State argued the statements were an exception under N.D.R.Ev. 803(3) and were non-testimonial in nature. The district court found the statements were admissible under N.D.R.Ev. 803(3) and were non-testimonial.

[¶4] At trial, Scott Redding, Mike Nason, Stephen Burton, and Mark Hunt provided testimony regarding the issues between Vickerman and the victim relating to a house and the custody of Vickerman's children. These witnesses further testified as to the fear the victim had that Vickerman may hurt him. Vickerman raised the same objections at trial that he raised in the hearing prior to trial.

[¶5] During trial the State offered testimony by a ballistics expert, who determined that he could neither include nor exclude the bullets from Vickerman's gun as ones being fired from the murder weapon. The medical examiner also testified the victim received four gunshot wounds to his head and chest and died as a result of those wounds.

[¶6] The maximum sentence for a class AA felony murder is life without parole. Vickerman was sentenced to 100 years, 20 years suspended, along with a four year minimum mandatory under N.D.C.C. § 12.1-32-02.1. His sentence also included a term of probation following Vickerman's release from custody. As required under N.D.C.C. § 12.1-32-09.1, Vickerman must serve at least 85% of the sentence as a violent offender.

[¶7] During sentencing, the district court considered the statutory factors under N.D.C.C. § 12.1-32-04. The court also expressed frustration with the Department of Corrections' perceived shortening of sentences since the oil boom and described Vickerman's conduct as "despicable, less than honorable." Vickerman now raises the issues identified above on appeal.

## II

### A

[¶8] Vickerman challenges the admission into evidence of statements made to Redding, Nason, Hunt, and Burton by the victim as hearsay. "The district court exercises broad discretion in determining whether to admit or exclude evidence, and its determination will be reversed on appeal only for an abuse of discretion." *State v. Kalmio*, 2014 ND 101, ¶ 10, 846 N.W.2d 752 (quoting *State v. Chisholm*, 2012 ND 147, ¶ 10, 818 N.W.2d 707). "A district court abuses its

discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably, or it misinterprets or misapplies the law." *Kalmio*, at ¶ 10 (quoting *Chisholm*, at ¶ 10).

[¶9]   Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. N.D.R.Ev. 801(c)-(c)(2). As a general rule, hearsay evidence is inadmissible. N.D.R.Ev. 802. The statements at issue in this case were properly considered hearsay.

[¶10]  An exception to the general rule excluding hearsay allows for admittance of "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." N.D.R.Ev. 803(3). The exception requires that "[1] the declarant's statement must be contemporaneous with the mental or emotional state sought to be proven, [2] there must be no circumstances suggesting a motive for the declarant to misrepresent his or her state of mind, and [3] the declarant's state of mind must be relevant to an issue in the case." *Schumacker v. Schumacker*, 2011 ND 75, ¶ 15, 796 N.W.2d 636 (citation omitted).

[¶11] A hearsay declarant's state of mind may be relevant to a criminal act when it shows a defendant's motive to engage in that act. *Kalmio*, 2014 ND 101, ¶ 20 (citing 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.05[2][a] n. 7 (2nd ed. 2013)). This may be true even when the declarant is a victim. *Kalmio*, at ¶ 20. "[E]vidence of victim's state of mind is admissible under Fed.R.Evid. 803(3), at least when relevant to defendant's motive to kill [.]" *Id*. (quoting Weinstein & Berger, *supra* (citing *United States v. Tokars*, 95 F.3d 1520, 1535 (11th Cir. 1996))). This ruling was illustrated in *Kalmio* when this Court affirmed a district court's ruling that a homicide victim's statements to others about her fear of the defendant were admissible under N.D.R.Ev. 803(3) to show the defendant had a motivation to kill her. *Kalmio*, at ¶ 22.

3

## B

[¶12] Hunt testified that the victim informed him the relationship between Vickerman and the victim had "deteriorated." Hunt testified there were times when the victim called Hunt and asked him to come over when Vickerman was expected at the victim's house. When asked why, Hunt testified that "[the victim] was concerned of what [Vickerman] might do." After considering the *Schumacker* factors, the district court found these statements admissible to illustrate the victim's concerns for safety against Vickerman. The victim's statements were contemporaneous with his mental or emotional state sought to be proven, there were no circumstances suggesting a motive for the declarant to misrepresent his state of mind, and the victim's state of mind was relevant to an issue in the case. The court's admission of the statements was not arbitrary, capricious, or unreasonable, and did not misinterpret or misapply the law. We conclude the district court did not abuse its discretion in admitting the statements.

## C

[¶13] Redding testified about the relationship troubles between the victim and Vickerman and that the victim was applying for custody of Vickerman's children. Redding also testified that the victim said he was afraid of Vickerman and that if anything ever happened to him, it was Vickerman that did it. After considering the *Schumacker* factors, the district court found that the victim's "statement to Redding as to his concern for his life to be contemporaneous with [his] state of mind," the victim did not have reason to "misrepresent his concern," and the victim "felt compelled to raise these apparently unresolved issues [sic] a month or so before [the victim] was shot and killed. So this Court deems the issues raised by [the victim] had not been resolved and were a part of the continuing dispute between Vickerman and [the victim]." The court's admission of the statements was not arbitrary, capricious, or unreasonable, and did not misinterpret or misapply the law. We conclude the district court did not abuse its discretion in admitting the statements.

4

## D

[¶14] Nason testified he had a professional relationship with the victim who serviced weapons at the store where Nason worked. Nason testified the victim asked to speak with him in April 2019 and informed Nason that "if anything should happen to him, any harm should come to him, that they should look at his son [Vickerman]." After considering the *Schumacker* factors, the district court found the victim's "fear [was] relevant to demonstrate why he undertook certain actions relevant to the case" and was relevant "toward motive and intent in regard to Vickerman." The victim's statements were contemporaneous with his mental or emotional state sought to be proven, there were no circumstances suggesting a motive for the declarant to misrepresent his state of mind, and the victim's state of mind was relevant to an issue in the case. The court's admission of the statements was not arbitrary, capricious, or unreasonable, and did not misinterpret or misapply the law. We conclude the district court did not abuse its discretion in admitting the statements.

## E

[¶15] Burton testified as to the issues between the victim and Vickerman and answered affirmatively that the victim was afraid of Vickerman. Burton testified that the victim told him to call the victim if Vickerman was ever found in the neighborhood. The district court found the victim's "concern for his life [was] relevant to demonstrate why he voiced he was afraid of being killed, and such concerns [were] relevant to this case." The victim's statements were contemporaneous with his mental or emotional state sought to be proven, there were no circumstances suggesting a motive for the declarant to misrepresent his state of mind, and the victim's state of mind was relevant to an issue in the case. The court's admission of the statements was not arbitrary, capricious, or unreasonable, and did not misinterpret or misapply the law. We conclude the district court did not abuse its discretion in admitting the statements.

## III

[¶16] Vickerman also challenges the admission of the victim's statements to Redding and Nason as being in violation of the Confrontation Clause of the

5

United States Constitution. When reviewing an alleged violation of a constitutional right, including the right to confront an accuser, this Court applies a de novo standard of review. *State v. Blue*, 2006 ND 134, ¶ 6, 717 N.W.2d 558. Even if this Court concludes there has been a violation, "[c]ertain federal constitutional errors do not automatically require reversal if it is shown they were harmless beyond a reasonable doubt." *Id.* at ¶ 29 (citing *State v. Frankfurth*, 2005 ND 167, ¶ 35, 704 N.W.2d 564). "In a criminal case, '[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.'" *Blue,* at ¶ 29 (quoting N.D.R.Crim.P. 52(a)). "Before determining an error is harmless beyond a reasonable doubt, the court must review the entire record and determine, in light of all of the evidence, the probable effect of the alleged error upon the defendant's rights." *Blue*, at ¶ 29. "A federal constitutional error may be declared harmless if the court is convinced that the error did not contribute to the verdict." *Id.*

[¶17] Even if the hearsay statements are admissible under an exception to the general rule to exclude hearsay from evidence, they may still be inadmissible if they violate the Confrontation Clause of the United States Constitution. *State v. Sorenson*, 2009 ND 147, ¶ 16, 770 N.W.2d 701. "[T]he Sixth Amendment prohibits the admission of testimonial hearsay against the accused, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the declarant. The Confrontation Clause does not apply to non-testimonial hearsay." *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Davis v. Washington*, 547 U.S. 813, 821 (2006)). In *Crawford*, the United States Supreme Court established a three-factor test for determining if statements are testimonial. *United States v. Bordeaux*, 400 F.3d 548, 556 (8th Cir. 2005). Statements are testimonial when they are (1) a product of formal interview, (2) obtained with government involvement, and (3) have a law enforcement purpose. *Sorenson*, at ¶ 20. Additionally, statements made to friends and family are usually considered non-testimonial. *Id.* at ¶ 19.

[¶18] Redding and Nason had law enforcement experience. Redding testified that he had known the victim for over 25 years and the two had served in the National Guard together. Redding mentioned his police career briefly when discussing his shared interest in fixing firearms with the victim. He brought it

up again stating the victim had sought his advice "because of my more intimate knowledge of the system . . . because of employment as a police officer—what I would do in his situation." The district court found that Redding and the victim were life-long friends and conversed merely as friends which seems to satisfy the requirement of an informal, non-governmental interaction that made the statements non-testimonial under *Bordeaux* and *Sorenson*. After conducting our de novo review, we conclude the district court properly assessed the statements and the circumstances under which they were given. The statements made to Redding were not testimonial and the admission of the statements did not violate the Confrontation Clause.

[¶19] Nason was asked how many years he had worked in law enforcement and he responded "[o]ver 30 years." In considering whether the statements the victim made to Nason were testimonial, the district court found "Nason was a private citizen . . . at the time of his April 2019 visit with [the victim]" and "Nason could not even testify as to the date the two talked that April. Certainly, there would have been better documentation and record had a formal statement been taken." After conducting our de novo review, we conclude the district court properly assessed the statements and the circumstances under which they were given. The statements made to Nason were not testimonial and the admission of the statements did not violate the Confrontation Clause.

IV

[¶20] Vickerman moved for a judgment of acquittal pursuant to N.D.R.Crim.P. 29, preserving his right to challenge the sufficiency of the evidence supporting his conviction, and argues there is insufficient evidence to support the jury's finding of guilty. The standard of review for a challenge to the sufficiency of evidence supporting a verdict is well established.

> [This Court] review[s] the record to determine whether there is sufficient evidence that could allow a jury to draw a reasonable inference in favor of the conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. We do not reweigh conflicting evidence or judge the credibility of witnesses.

7

*State v. Mohamud*, 2019 ND 101, ¶ 12, 925 N.W.2d 396 (citation omitted). "A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty." *State v. Wanner*, 2010 ND 121, ¶ 9, 784 N.W.2d 143 (quoting *State v. Dahl*, 2009 ND 204, ¶ 6, 776 N.W.2d 37).

[¶21] Vickerman argues the ballistics expert's conclusion that he could neither exclude nor include Vickerman's firearm as the weapon which fired the bullets that killed the victim must lead to a finding that no reasonable jury could convict him and that the jury wholly disregarded this testimony. The record includes surveillance video recovered from the home showing an individual with characteristics consistent with Vickerman and clothes consistent with Vickerman's clothing. The video shows an individual entering the home after the shooting and picking up items from the floor. The video shows the individual is wearing mauve pants, a dark sleeved top, bracelets, and dark shoes with white soles, consistent with exhibits showing the defendant wearing mauve-colored pants, a dark sleeved top, bracelets, and dark shoes with white soles. When law enforcement arrived on the scene, Vickerman was sitting on a bench outside the victim's front door. There was a shell casing under the bench which was subsequently determined to have been fired from a firearm located inside Vickerman's cabinet. Although the bullets recovered from the victim could neither be included nor excluded as being fired from that firearm, the bullets were consistent with the general rifling characteristics of the firearm. After our review of the evidence we conclude there is sufficient evidence in the record to allow a jury to draw a reasonable inference in favor of conviction regardless of whether Vickerman's firearm could be conclusively excluded or confirmed as the weapon used to kill the victim.

V

[¶22] Vickerman contends statements made by the district court during sentencing demonstrate impermissible bias in violation of his right to a neutral magistrate. Vickerman calls specific attention to the court characterizing Vickerman's conduct as "despicable, less than honorable" and the court's expressing of frustration with the Department of Corrections (presumably a reference to early parole granted to defendants).

[¶23] "A judge is presumed by law to be unbiased and not prejudiced." *State v. Jacobson*, 2008 ND 73, ¶ 6, 747 N.W.2d 481. The North Dakota Code of Judicial Conduct lists instances to be considered when evaluating impartiality and uses an objective standard to determine whether a judge reasonably meets that criteria. *Id*. at ¶¶ 7-8. "During sentencing, a judge may express his appraisal of the defendant's conduct and may do so in such a manner that will impress upon the defendant the error of his ways." *State v. Dailey*, 2006 ND 184, ¶ 10, 721 N.W.2d 29 (citing *Simmons v. United States*, 302 F.2d 71, 77 (3rd Cir. 1962)). "The judge's effort to help the defendant understand the wrongful nature of his conduct does not indicate bias or prejudice." *Dailey*, at ¶ 10.

[¶24] The district court's characterization of Vickerman's conduct as "despicable, less than honorable" and expression of frustration with the Department of Corrections do not objectively establish the court's impartiality and were arguably warranted by the sentencing process. *See Jacobson*, 2008 ND 73, ¶ 6; *Dailey*, 2006 ND 184, ¶ 10. We conclude the district court did not act with objective bias.

## VI

[¶25] Vickerman asserts a sentence for a term of years exceeding his life expectancy with parole implicitly violates N.D.C.C. § 12.1-32-01(1). Our review "of a criminal sentence is generally limited to determining whether the district court acted within the statutory sentencing limits or substantially relied upon an impermissible factor." *State v. Wilder*, 2018 ND 93, ¶ 17, 909 N.W.2d 684 (citing *State v. Corman*, 2009 ND 85, ¶ 15, 765 N.W.2d 530). "Statutory interpretation is a question of law, which is fully reviewable on appeal." *Wilder*, at ¶ 17. "Penal statutes are generally strictly construed against the government." *Id.*

[¶26] The maximum penalty for a class AA felony is life imprisonment without parole. N.D.C.C. § 12.1-32-01(1). "The court must designate whether the life imprisonment *sentence imposed* is with or without an opportunity for parole." *Id*. (emphasis added). "In the case of an offender who is sentenced to a term of life imprisonment *with opportunity for parole* under subsection 1 of section 12.1-32-01, the term '*sentence imposed*' means the remaining life expectancy of

the offender on the date of sentencing. The remaining life expectancy of the offender must be . . . computed by reference to a recognized mortality table as established by rule by the supreme court." N.D.C.C. § 12.1-32-09.1(2) (emphasis added).

[¶27] The district court imposed a sentence of 100 years with the possibility of parole. After reviewing the record of the sentencing, we are left with uncertainty in whether the court was attempting to impose what would effectively be a life sentence when it stated as follows: "[M]y confidence in the [DOC] has certainly been shaken. We all know that they view a human year, excuse me, a [DOC] year to be much less than a human year in that—and I don't know to the degree that the [DOC] . . . will follow this Court's directive, and therefor [sic] I want it to be difficult, if they're going to go against my sentence."

[¶28] We conclude N.D.C.C. § 12.1-32-09.1(2) requires a life sentence with parole to include a calculation of Vickerman's remaining life expectancy using the mandated mortality table. Given the ambiguity created by the district court's statement we reverse the sentence and remand for resentencing without limitation from the previously imposed sentence.

## VII

[¶29] Sufficient evidence was provided to support Vickerman's conviction for a class AA felony murder, the district court did not abuse its discretion in the admission of hearsay, none of the hearsay statements violated Vickerman's constitutional right to confrontation, and we conclude the court was not objectively biased. The sentence of Vickerman, on its face, appears to violate the requirement under N.D.C.C. § 12.1-32-09.1(2) to compute Vickerman's remaining life expectancy. We affirm the conviction, reverse the sentence, and remand the case to the district court for sentencing without limitation from the previously imposed sentence.

[¶30] Jon J. Jensen, C.J.
　　　Daniel J. Crothers

10

Lisa Fair McEvers

Jerod E. Tufte

[¶31] The Honorable Gerald W. VandeWalle recused himself subsequent to oral argument and did not participate in this decision.