# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 227

McKenzie Electric Coop., Inc.,                                    Petitioner

      v.

The Honorable Daniel S. El-Dweek, Judge of the
District Court, Northwest Judicial District, The
Honorable Kirsten M. Sjue, Acting Presiding Judge,
Northwest Judicial District; Basin Electric Power
Cooperative; Upper Missouri G&T Electric Cooperative
Inc.; and Mountrail-Williams Electric Cooperative,          Respondents

### No. 20240275

Petition for Supervisory Writ.

PETITION FOR SUPERVISORY WRIT DENIED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices McEvers and Bahr joined. Justice Crothers filed a concurring opinion, in which Justice McEvers joined.

Matthew D. Segal (argued), Sacramento, California; Ariston E. Johnson (appeared), Watford City, North Dakota; Jeremy D. Sacks (on brief), Per A. Ramfjord (on brief), Samantha K. Sondag (on brief), and Rachel C. Lee (appeared), Portland, Oregon; for petitioner.

Andrew D. Silverman (argued) and Lisa T. Simpson (on brief), New York, New York; Randall J. Bakke (on brief) and Shawn A. Grinolds (appeared), Bismarck, North Dakota; and Samantha Leff (appeared), Washington, D.C., for respondent Basin Electric Power Cooperative.

Adrian A. Miller, Billings, Montana, and James A. Orr and Stacey M. Mohr, Atlanta, Georgia, for respondent Upper Missouri G&T Electric Cooperative Inc.; on brief.

Aubrey Jo Fiebelkorn-Zuger (argued) and Todd E. Zimmerman (on brief), Fargo, North Dakota, for respondent Mountrail-Williams Electric Cooperative.

**McKenzie Electric Coop., Inc. v. El-Dweek**
**No. 20240275**

**Tufte, Justice.**

[¶1]   McKenzie Electric Cooperative, Inc. ("McKenzie Electric") petitions this Court for a supervisory writ directing the district court to vacate its order of recusal, deny the motion for recusal, and reassign the action back to Judge El-Dweek. Basin Electric Power Cooperative ("Basin Electric"), Upper Missouri G & T Electric Cooperative, Inc. ("Upper Missouri"), and Mountrail-Williams Electric Cooperative ("Mountrail-Williams") ("collectively Respondents") oppose the petition. We deny the petition, concluding this is not an appropriate case in which to exercise our supervisory jurisdiction.

I

[¶2]   This case commenced in November 2019. In July 2020, Judge El-Dweek disclosed to the parties that he was a member of McKenzie Electric. The parties conducted discovery through 2023. At some time during 2023, McKenzie Electric disclosed that it was seeking between $479 million and $510 million in damages and it intended to distribute the award to its members. In July 2023, the court scheduled a 30-day jury trial to commence on January 6, 2025. Summary judgment motions were filed in December 2023. In May 2024, Respondents filed a motion for a change of venue, citing the potential jurors' likely membership in McKenzie Electric and their resulting economic interest in the outcome of the case. At the hearing on the motion in August 2024, Judge El-Dweek again reminded the parties he was a member of McKenzie Electric, stating: "And if anybody wants to do anything with that information, they are certainly welcome to." Following the hearing, Respondents filed a motion for recusal. After briefing and a hearing on the motion, Judge El-Dweek described the timing for the motion as "suspect" but recused himself, concluding: "The integrity of the justice system demands that [he] recuse[] himself from this case solely because of the mere appearance of impropriety."

1

## II

[¶3]   This Court may review a district court decision under its supervisory authority. N.D. Const. art. VI, § 2; N.D.C.C. § 27-02-04. "Our authority to issue a supervisory writ is discretionary." *Dep't of Health & Hum. Servs. v. State*, 2024 ND 54, ¶ 6, 5 N.W.3d 547 ("*NDDHHS v. State*") (citation omitted). "We exercise our authority to issue supervisory writs rarely and cautiously on a case-by-case basis and only to rectify errors and prevent injustice in extraordinary cases when no adequate alternative remedy exists." *Id.* "We generally will not exercise our supervisory jurisdiction where the proper remedy is an appeal." *Id.* "Superintending control is an extraordinary power which will be exercised on behalf of a litigant only under circumstances that are tantamount to a denial of justice." *Spence v. N. Dakota Dist. Ct.*, 292 N.W.2d 53, 57–58 (N.D. 1980) (cleaned up).

## III

[¶4]   McKenzie Electric argues "a supervisory writ is required to rectify errors and prevent injustice in connection with the Recusal Order." It argues granting the writ "serves the fundamental interests of litigants, and other important public interests" because it would prevent delay and conserve judicial resources. McKenzie Electric further argues that reversal of the recusal order will prevent abuse of the disqualification process by litigants.

[¶5]   Our justice system presumes judges impartially apply the law and the result does not depend on which judicial officer decides the case. *Solberg v. Hennessy*, 2024 ND 91, ¶ 2, 6 N.W.3d 820 ("The law presumes a judge is unbiased and not prejudiced.") (citations omitted); *see also Micale v. Polen*, 487 So. 2d 1126, 1129 (Fla. Dist. Ct. App. 1986) (explaining that although the court of appeals did not agree with the trial court's decision to recuse, it would "deny the petition for writ of mandamus because the matter can readily be heard before another judge of the circuit without undue prejudice to the parties"). Therefore, even if we assume the recusal was a matter of discretion here or the issue was waived, or if we assume the duty to sit should have led the district court to deny the motion, then having a different judge decide the case does not merit assertion of our jurisdiction. Furthermore, any error in granting or denying recusal that raises a

serious question of actual bias of the judge ultimately deciding this case can be remedied by appeal. *See In re Hurley*, 931 A.2d 437 (Del. 2007) (denying writ, reasoning that a party may appeal a claim of error in a decision by a "trial judge being disqualified by reason of bias or prejudice"). Lacking a serious question of actual bias warranting our intervention, the matter is one of judicial economy and judicial ethics.

[¶6] McKenzie Electric argues reversal of this recusal order will prevent abuse of the disqualification process by litigants in future cases. "Only when the rights or interests of the public are directly affected will the exercise of original jurisdiction be justified." *Spence*, 292 N.W.2d at 59. Although we seek to deter abuse of the disqualification and recusal process, granting the writ here under our discretionary extraordinary jurisdiction appears unlikely to deter strategic behavior by other litigants or unnecessary recusals by other judges.

[¶7] McKenzie Electric also argues it suffered an injustice due to the delay in trial proceedings. It argues the delay is compounded by the assignment of a new judge unfamiliar with the case. *See Edison v. Edison*, 2023 ND 141, ¶ 29, 994 N.W.2d 151 ("The judge's knowledge of and insight regarding the case and parties will be lost if a new judge is assigned."). Although there may be some loss of judicial economy resulting from reassignment when the judge has years of knowledge and experience with this case, we note that no hearing or trial has commenced that would require a new judge to certify familiarity with the record under N.D.R.Civ.P. 63 or conduct a new hearing or trial on the proceedings.

[¶8] A writ granting the relief sought by McKenzie Electric would likely remedy little, if any, of the delay resulting from the recusal and reassignment. If the delay in trial proceedings causes injustice here, granting the petition would not prevent the delay already set in motion. The January trial date has already been delayed. Motions for summary judgment are also pending with the district court, which may have delayed the trial regardless of the motion to recuse. Much of the delay in trial proceedings is now unavoidable and cannot be remedied.

[¶9] Our authority to issue a supervisory writ is discretionary. We exercise that discretion rarely and cautiously—and only to rectify errors and prevent injustice

in extraordinary cases. Under the circumstances presented in this case, where the claimed injustice stems primarily from delay that largely cannot now be remedied and the reassignment presents no serious question of judicial bias, we decline to exercise our discretion to consider the supervisory writ.

IV

[¶10] McKenzie Electric requests, in the alternative, we order the action "may not be reassigned to a judge who is a member of Mountrail-Williams" or "to any other judge who purchases electricity from any other electric cooperative that is a member of Basin [Electric] or UMPC." This Court has a process in place for reassigning judges. *See* N.D. Sup. Ct. Admin. R. 17. We decline McKenzie Electric's unprecedented request to depart from our standard procedures and prematurely disqualify judges. *See, e.g., Larson v. Williams Elec. Co-op., Inc.*, 534 N.W.2d 1, 5 (N.D. 1995) ("Disqualification of all jurors belonging to an identifiable group without inquiry as to their actual bias, if left unremedied, threatens to erode our jury system.").

V

[¶11] We conclude this is not an appropriate case in which to exercise our supervisory jurisdiction, and we deny the petition.

[¶12]  Jon J. Jensen, C.J.
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr


**Crothers, Justice, concurring.**

[¶13]  I concur in the denial of McKenzie Electric's motion for a supervisory writ. I nevertheless write separately to make clear my position that the decision to not issue a writ should not be read as my agreement with the Respondents' arguments. Rather, I believe that the Respondents waived their objection to the judge sitting on the case, and that many of the arguments advanced by the parties

4

to this proceeding do not correctly apply North Dakota law on recusal and disqualification.[1] However, even applying the law as I see it, issuing a supervisory writ will not undo the strategic damage done by the Respondents' untimely and unsupported motion.

I

[¶14] On December 11, 2019, Basin Electric and Upper Missouri moved to dismiss the complaint. At the July 9, 2020 hearing on the motions to dismiss, the judge stated:

> One thing I just want to tell you guys, and it just occurred to me recently here, is I live slightly outside of city limits; so I am a consumer and a member I suppose of the McKenzie Electric Cooperative. I guess I don't—just one residential house of a member. I don't see it as a conflict for me, but I just wanted to let counsel know that I am a member and it's just out there.

After the judge's statement he asked the parties if anyone "see[s] any issue with that?" Basin Electric's attorney responded: "I haven't had a chance to speak with my client about this, but at this point I think we should just proceed with the arguments as if there is no issue." Upper Missouri's attorney agreed. Respondent Mountrail-Williams was not involved in the hearing because it did not intervene in this case until 2021. Neither party subsequently filed a motion to disqualify the judge. Mountrail-Williams was permitted to intervene in the action on May 18, 2021, so it was not part of the July 9, 2020 proceeding and did not hear the judge's disclosure.

---

[1] The parties and the district court used the terms "recuse" and "recusal" to describe the Respondents' motion and the judge's subsequent action. In my view, "disqualification" is the correct term for a motion to prevent or remove a judge from presiding over a case. *See Sume v. State*, 773 So.2d 600, 601-02 (Fla. App. 2000) ("Recusal" is the process whereby judges remove themselves from cases where "disqualification" is the process by which a party seeks to have a judge removed.); Garwin, McDermott & Rendleman, *Annotated Model Code of Judicial Conduct*, at 244 (3d ed. 2016) ("Traditionally, 'recusal' has referred to a judge's voluntary, discretionary decision to step down in a case, while 'disqualification' refers to a motion for the statutorily or constitutionally mandated removal of a judge from a case.") (cleaned up)). The N.D. Code Jud. Conduct acknowledges "[i]n many jurisdictions, the term 'recusal' is used interchangeably with the term 'disqualification.'" N.D. Code Jud. Conduct 2.11 [cmt. 1].

[¶15] On September 5, 2024, Basin and Upper Missouri made a joint motion for recusal "[p]ursuant to the North Dakota Code of Judicial Conduct Canon 2.11[.]" In their brief supporting the motion they argued the judge's cooperative membership created "a direct financial stake in the outcome of this case, and that financial interest creates a reasonable question as to both your Honor's impartiality and the appearance of impropriety." In a September 9, 2024 filing Basin and Upper Missouri argued they did not waive disqualification by not making a motion after the July 9, 2020 proceeding. At the same time, they acknowledged that they learned in January 2023 that any recovery by McKenzie Electric would go to end user-members, and in June 2023 that McKenzie Electric was seeking between $479 and $510 million. From these numbers the Respondents estimated the judge could receive from $4,704 to $5,427 if McKenzie Electric prevails.

[¶16] Mountrail-Williams joined the motion to recuse on September 9, 2024. It argued the judge had a "financial interest" in the litigation. It also acknowledged it knew the size of McKenzie Electric's claim during 2023. Therefore, as early as January 2023, but no later than release of the expert's report in June 2023, all Respondents knew of, and took no action on, the judge's alleged economic interest in the litigation.

[¶17] On September 10, 2024, a hearing was set for a number of pending motions, including for change of trial venue because of potential juror membership in McKenzie Electric. The judge determined the judicial disqualification motion was a threshold matter. At the hearing the judge raised the question whether the need for his disqualification would be obviated if he disclaimed any interest in McKenzie Electric's potential recovery. Basin and Upper Missouri argued North Dakota law does not permit disclaimer and, therefore, disqualification was not necessary notwithstanding the judge's suggestion he could divest himself of any pecuniary interest in the litigation.

[¶18] On September 24, 2024, the judge granted the motion to disqualify, stating:

> The integrity of the justice system demands that the undersigned recuses himself from this case solely because of the mere appearance of impropriety. Even though the proponents

6

themselves have created the appearance of impropriety by presenting the motion to recuse in such a way that alleges a financial [interest] that may or may not inure to the undersigned, this is unfortunately still enough for the undersigned to conclude that the wiser course he must recuse from further proceedings in this matter.

## II
## A Judge's Duty to Sit

[¶19] Judges have the responsibility to decide cases assigned to them unless disqualification is required. N.D. Code Jud. Conduct 2.7 ("A judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.11 or other law."). The comment to Rule 2.7 provides:

> Judges must be available to decide the matters that come before the court. Although there are times when disqualification is necessary to protect the rights of litigants and preserve public confidence in the independence, integrity, and impartiality of the judiciary, judges must be available to decide matters that come before the courts. Unwarranted disqualification may bring public disfavor to the court and to the judge personally. The dignity of the court, the judge's respect for fulfillment of judicial duties, and a proper concern for the burdens that may be imposed upon the judge's colleagues require that a judge not use disqualification to avoid cases that present difficult, controversial, or unpopular issues.

Although none of the parties cited Rule 2.7 in their briefing, McKenzie Electric did cite *Rath v. Rath*, 2018 ND 138, ¶ 25, 911 N.W.2d 919, for the proposition that "Although a judge has a duty to recuse when required by the Code of Judicial Conduct, a judge also has an equally strong duty not to recuse when the circumstances do not require recusal."

[¶20] Under Rule 2.7 a judge must sit, and continue sitting, on a case unless he or she is disqualified under N.D. Code Jud. Conduct 2.11. This normally straightforward procedure was complicated in this case due to the timing of the Respondents' motion.

## III
## Timing of Respondents' Motion

[¶21] Basin and Upper Missouri were advised by the judge in 2020 that he was a member of McKenzie Electric Cooperative. *See* N.D. Code Jud. Conduct Rule 2.11 cmt. 6 ("A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification."). All parties agreed to proceed with the hearing. If the Respondents wanted to remove the judge from this case due to that membership, they had an obligation to promptly do so. *See State v. Jacobson*, 2008 ND 73, ¶ 23, 747 N.W.2d 481 ("A party seeking to disqualify a judge from a proceeding must file a timely motion."). The Respondents did nothing to disqualify the judge at or during a reasonable time after the disclosure. They now argue they did not need to do anything in 2020 because the judge's potential recovery of money as a member of McKenzie Electric, and the amount of any potential recovery, were unknown. For its part, Mountrail-Williams argues it was not yet a party to the proceeding when the judge made his 2020 disclosure.

[¶22] Accepting without agreeing that all of the Respondents' statements and arguments about 2020 are correct, undisputed facts establish that they knew of the judge's potential recovery no later than June 2023, yet did not make a motion to recuse until September 2024. McKenzie Electric claims that by waiting until 2024, the Respondents impliedly waived their opportunity to move for recusal. Basin and Upper Missouri disagree, arguing their motion was "fully consistent with Rule 2.11(C) of the North Dakota Code of Judicial Conduct, which authorizes parties to indicate whether they 'agree' 'to waive disqualification' after a judge 'asks.'" (Cleaned up.) Mountrail-Williams similarly relies on Rule 2.11(C) to claim it did not waive or remit the judge's disqualification. McKenzie Electric also cites *Jacobson* to argue "litigants may remit disqualification by agreeing to proceed." 2008 ND 73, ¶¶ 19-22. For the reasons I explained in *Jacobson*, and that I explain below, a judge's disclosure on the record is a very different act than remittal of disqualification. Mixing the two will lead to a

8

flawed analysis of whether the Respondents waived their opportunity to seek the judge's disqualification.

A
Disclosure on the Record vs. Remittal of Disqualification

[¶23] On July 9, 2020, the district court judge told the parties at a hearing, on the record, that he is a member of the McKenzie Electric Cooperative. At the September 10, 2024 hearing he again disclosed his membership in McKenzie Electric. The judge did not recuse himself from presiding over the case at either hearing. The parties did not move for the judge's disqualification at either hearing. Rather, he disclosed information and the proceeding continued. In this context, the analytical paths associated with disclosure, disqualification, and remittal is crucial.

[¶24] The judiciary rightfully is concerned about due process and ensuring that litigants receive, and believe they receive, equal treatment in a fair and impartial tribunal. N.D. Code Jud. Conduct, Preamble ("An independent, fair and impartial judiciary is indispensable to our system of justice."). To that end, a judge is disqualified in presiding over a matter under circumstances described in Rule 2.11(A). *See Sargent Cnty. Bank v. Wentworth*, 500 N.W.2d 862, 877 (N.D. 1993) (applying a prior version of the code of judicial conduct and holding the disqualification provisions in the code of judicial conduct are mandatory). When a judge is disqualified, except for bias, Rule 2.11(C) provides a detailed process for the parties and the judge to waive or "remit" the judge's disqualification. However, the predicate for remittal is that the judge is disqualified. If the judge is not disqualified, Rule 2.11(C) is not applicable and, respectfully, the majority in *Jacobson* erred by holding otherwise. 2008 ND 73.

[¶25] Rule 2.11(C) provides the process for remittal of disqualification:

A judge subject to disqualification under this Rule, other than for bias or prejudice under paragraph (A)(1), may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, outside the presence of the judge and court personnel, whether to waive disqualification. If, following the

9

disclosure, the parties and lawyers agree, without participation by the judge or court personnel, that the judge should not be disqualified, the judge may participate in the proceeding. The agreement shall be incorporated into the record of the proceeding.

Arguably, the opening clause in Rule 2.11(C) is confusing when it refers to "A judge *subject to* disqualification under this Rule . . . ." (Emphasis added.) Some apparently read these words to say remittal applies in the case of a potential disqualification. But such a construction ignores the difference between remittal of a judge's disqualification under Rule 2.11(C) and disclosure under Rule 2.11 cmt. 6, of information that a then non-disqualified judge believes might be relevant to litigants in deciding whether to move to disqualify the judge.

[¶26] The predecessor to Rule 2.11(C) was Canon 3F. Garwin et al., *Annotated Model Code of Judicial Conduct*, at 242. The opening clause in Canon 3F was clear— "A judge *disqualified* by terms of Section 3E may disclose . . . ." (emphasis added), Annotated Model Code of Jud. Conduct, Canon 3, subd. F (Am. Bar Ass'n 2004). By plain terms, remittal under section 3F was available starting after the judge was "disqualified." *Id.* The words "subject to disqualification" in Rule 2.11(C) apparently suggest to some that remittal of disqualification can occur when the judge is thinking about recusal. Such a construction is contrary to all available information.

[¶27] The drafter's notes make clear that changes from Sections 3E and 3F to Rule 2.11 were "stylistic and structural rather than substantive." Geyh & Hodes, *Reporters' Notes to the Model Code of Judicial Conduct*, at 45 (2009). They specify the only substantive changes were adding "domestic partner" to three per se disqualification sections, adding "general partner" and "managing member" to one per se disqualification section, clarifying disqualification for former government lawyers, requiring disqualification for judges who might participate in a case at different court levels, and adding in comment 2 that the duty to disqualify exists regardless of a motion. *Id*. at 46. Based on this information from the drafters, no real question exists about when the remittal of disqualification process under Rule 2.11(C) becomes available. That availability under Rule 2.11(C) is the same as it was under section 3F—which is after a judge is disqualified.

[¶28] When facts are known by a judge but disqualification is not warranted, judges are encouraged under Rule 2.11 cmt. 6, to provide litigants with information about potential conflicts. That comment states, "A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification."

[¶29] Here, the judge did not grant the motion for recusal until September 24, 2024. Until that date, he was not disqualified. Therefore, before September 24, 2024, the judge was not subject to remittal of disqualification under Rule 2.11(C). From this it must follow that the judge's disclosures on July 9, 2020 and September 10, 2024, were just that—the provision of information to the parties under Rule 2.11 cmt. 6.

[¶30] A judge providing information under Rule 2.11 cmt. 6, normally gives the parties a fresh opportunity to move to disqualify the judge. Garwin et al., *Annotated Model Code of Judicial Conduct*, at 335 ("Disclosure of information relevant to disqualification does not mandate a judge's disqualification, but rather, it gives the parties an opportunity to file a motion to recuse or to waive the issue."). Here, however, the information disclosed by the judge to the parties on September 10, 2024, was known to all parties starting in July 2020 and culminating no later than June 2023.

[¶31] Plainly put, "[a] party seeking to disqualify a judge from a proceeding must file a timely motion." *Jacobson*, 2008 ND 73, ¶ 23. Cases from around the country agree that a party waives the opportunity to complain about a judge presiding over a case when they fail to make a timely motion to disqualify the judge, or at least to make a timely objection to the judge continuing to preside. *See* Flamm, *Recusal and Disqualification of Judges, For Cause Motions, Peremptory Challenges and Appeals*, at 889-90 (2018) and cases collected therein. Here, the Respondents all knew of the judge's potentially disqualifying membership more than a year before they moved to remove him from the case. As a matter of law, that delay is a waiver of their objections to the judge continuing to preside over this matter.

11

## IV

[¶32] The Respondents moved to disqualify the judge from presiding over this case due to his membership in McKenzie Electric and his potential personal recovery of money if McKenzie Electric recovers on its claims. McKenzie Electric argues that the judge's pecuniary interest in this lawsuit is inadequate and too remote of a possibility to require his disqualification, and that the judge abused his discretion granting the Respondents' motion for recusal. Consideration of these arguments begins with the plain language in N.D. Code Jud. Conduct 2.11.

[¶33] The structure and wording of Rule 2.11(A) arguably lends confusion to the appropriate analytical framework when considering arguments that disqualification was required due to both an appearance of partiality and possession of an economic interest in the outcome of the proceeding. I believe clarity is advanced by first considering disqualification for an economic interest.

### A
### Economic Interest

[¶34] Rule 2.11(A), subparagraphs (1) through (5) contains per se disqualification requirements. *Jacobson*, 2008 ND 73, ¶¶ 32-33 (Crothers, J., concurring and dissenting) (describing predecessor sections 3E and 3F (citing James J. Alfini et al., *Judicial Conduct and Ethics* § 4.04, at 4-10 (4th ed. 2007)) (explaining "The Codes provide a list of circumstances in which a judge's disqualification is automatic.")). One of the per se disqualification requirements is when "The judge knows that the judge . . . has an economic interest in the subject matter or in controversy or in a party to the proceeding." N.D. Code Jud. Conduct 2.11(A)(3). The Respondents (and to some extent the Petitioner) argue we should take guidance from federal court cases applying the federal statute for disqualification due to the amount of a judge's pecuniary interest. On this point the federal cases lie somewhere between unhelpful and misleading.

[¶35] Chapter 21, § 455(b)(4), 28 U.S.C., disqualifies a federal judge from sitting on a case in which the judge has a "financial interest." A "'financial interest' means ownership of a legal or equitable interest, however small." *Id*. at 455(d)(4).

Unlike North Dakota's "economic interest," the federal "financial interest" limitation makes no allowance for owning a de minimis interest. *Id*. Therefore, a federal judge with *any* financial interest is disqualified. The same is not true for North Dakota judges who are not automatically disqualified for owning a de minimis amount. N.D. Code Jud. Conduct, Terminology (an economic interest "means ownership of more than a de minimis legal or equitable interest"); N.D. Code Jud. Conduct 2.11 cmt. 7 ("'Economic interest,' as set forth in the Terminology section, means ownership of more than a de minimis legal or equitable interest."). Thus, the federal cases cited by both parties provide us with no guidance on the question of when the amount of a judge's pecuniary interest is disqualifying. Instead of looking to the federal courts' decisions, we must examine the language of Rule 2.11 and any application of the provision by sister states that have, like us, adopted the American Bar Association's Model Code of Judicial Conduct.

[¶36] The North Dakota Code of Judicial Conduct defines "de minimis" as "An insignificant interest that could not raise a reasonable question regarding the judge's impartiality." N.D. Code of Jud. Conduct, Terminology. Black's Law Dictionary defines the term as, "1. Trifling; negligible. 2. (Of a fact or thing) so insignificant that a court may overlook it in deciding an issue or case." *Black's Law Dictionary*, 543 (12th ed. 2024). The drafting history reflects that this portion of the ABA Model Code of Judicial Conduct was modified to replace "financial interest" with "economic interest." Garwin et al., *Annotated Model Code of Judicial Conduct*, at 323. The drafters of the model code also replaced "however small" with "de minimis to mean 'an insignificant interest that could not raise reasonable question as to a judge's impartiality.'" *Id*. "This language dispelled the notion that a judge is disqualified if he or she owns even one share of stock in a party to the litigation, regardless of how small its value, but does not provide a bright-line test to determine whether an interest is de minimis." *Id*.

[¶37] Several state courts have discussed a judge's de minimis economic interest in the litigation. In *Huffman v. Arkansas Judicial Discipline and Disability Commission*, 42 S.W.3d 386, 391 (Ark. 2001), the court determined that "de minimis" denotes an insignificant interest that could not raise a reasonable question as to a judge's impartiality. There, the judge and his wife owned

13

approximately 12,000 shares of Wal-Mart stock worth about $700,000. *Id.* The court concluded that holding was not de minimis either in amount or in light of the total number of Wal-Mart's outstanding shares. *Id.* at 394. *See also Abell v. Oliver*, 117 S.W.3d 661, 664 (Ky. App. 2003) (Buckingham, J., concurring in result) (judge's husband's interest in his law firm's substantial medical malpractice verdict "could clearly raise a reasonable question as to the judge's impartiality in this case"); *Espinoza v. St. Mary Medical Center, Inc.*, 233 N.E.3d 1009, ¶ 25 (Ind. App. 2024) (judge not disqualified due to son's economic interest because his son who worked for law firm for defendant did not work on case and was not a partner at the law firm with a pecuniary interest in the outcome).

[¶38] "A district court's decision on a motion for recusal is reviewed under the abuse of discretion standard." *Rath v. Rath*, 2013 ND 243, ¶ 14, 840 N.W.2d 656. "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law." *McGhee v. Mergenthal*, 2007 ND 120, ¶ 9, 735 N.W.2d 867.

[¶39] Under N.D. Code Jud. Conduct 2.11(A)(3), the judge is disqualified if the judge "has an economic interest in the subject matter in controversy or in a party to the proceeding." A disqualifying ownership interest can be legal or equitable. Rule 2.11 cmt. 7. Here, the judge is a member of the plaintiff McKenzie Electric. McKenzie Electric is seeking a multi-million dollar recovery and, if it is successful, said it would distribute the recovery to cooperative members— including a possibility the judge could receive up to $5,000. Under these facts, it would not be an abuse of discretion for the judge to conclude he had an economic interest in the proceeding. As a result, McKenzie Electric has not shown that this is one of the rare cases requiring that we provide extraordinary relief by issuing a supervisory writ. *Forum Commc'ns Co. v. Paulson*, 2008 ND 140, ¶ 8, 752 N.W.2d 177 ("We exercise our authority to issue supervisory writs rarely and cautiously, and only to rectify errors and prevent injustice in extraordinary cases in which there is no adequate alternative remedy.") (cleaned up). I therefore agree that we should not issue a supervisory writ ordering the judge to preside over this case.

## B
## Judge's Impartiality Might Reasonably Be Questioned

[¶40] The Respondents also argued the judge was disqualified because his "financial interest creates a reasonable question as to both your Honor's impartiality and the appearance of impropriety." While the words used by McKenzie Electric are not those in Rule 2.11, the district court correctly read them as a claim that "the judge's impartiality might reasonably be questioned." N.D. Code Jud. Conduct 2.11(A).

[¶41] "Rule 2.11(A) is a catchall provision mandating disqualification whenever a judge's impartiality 'might reasonably be questioned.' A party may seek a judge's disqualification under this general provision when the circumstances do not altogether fit into one of Rule 2.11(A)'s specifically delineated subsections or when the situation clearly falls outside one of those specified scenarios." Garwin et al., *Annotated Model Code of Judicial Conduct*, at 251 (citing Leslie W. Abramson, *Appearance of Impropriety: Deciding When a Judge's Impartiality "Might Reasonably Be Questioned*," 14 Geo. J. Legal Ethics 55 (2000)).

[¶42] The test for when a judge's impartiality might be questioned is one of reasonableness—which is objective. *Jacobson*, 2008 ND 73, ¶ 35. Under this objective test, the inquiry is whether the judge would be able to carry out her judicial responsibilities with the required degree of detachment. Flamm, *Judicial Disqualification, Recusal and Disqualification of Judges*, at 278 (3d ed. 2017) (footnotes omitted). Otherwise stated, "A judge is expected to recuse herself whenever her impartiality might reasonably be questioned by an objective observer, or when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness." *Id.*; *Datz v. Dosch*, 2014 ND 102, ¶ 16, 846 N.W.2d 724 ("The test for the appearance of impartiality is one of reasonableness and recusal is not required in response to spurious or vague charges of impartiality.").

[¶43] "At common law one thing and one thing alone was deemed to preclude a judge from presiding over a case: having a pecuniary interest in it." Flamm,

*Judicial Disqualification, Recusal and Disqualification of Judges,* at 317 (footnote omitted). The ABA Model Code of Judicial Conduct has expanded the grounds, now requiring disqualification when a judge's impartiality reasonably can be questioned. Annotated Model Code of Jud. Conduct, Commentary to Canon 3E, at 184 (Am. Bar Ass'n 2004); *see also* N.D. Code Jud. Conduct, Terminology ("'Impartial,' 'impartiality,' and 'impartially' mean absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge.").

[¶44] Here, the judge is a member of McKenzie Electric, which is seeking a large financial recovery. McKenzie Electric has represented that, if successful, it will distribute the recovery to cooperative members—including the judge. At oral argument the parties confirmed that the judge's potential recovery is between $4,704 and $5,427. This potential payment to the judge is significant. Thus, like above in the discussion of economic interest, under these facts it would not be an abuse of discretion for the judge to conclude a reasonable person knowing all the facts reasonably could question the judge's partiality. On this basis McKenzie Electric cannot show the judge's decision to grant the motion was an abuse of discretion, or this is one of the rare cases requiring that we provide the extraordinary relief of a supervisory writ. *Forum Commc'ns*, 2008 ND 140, ¶ 8.

[¶45] Daniel J. Crothers
     Lisa Fair McEvers